

*Ilana Haramati*
*Partner*
*Direct (646) 860-3130*
*Fax (212) 655-3535*
*ih@msf-law.com*

June 30, 2022

**VIA ECF**

Hon. Raymond J. Dearie
United States District Court Judge
United States Courthouse
225 Cadman Plaza East
Courtroom 10A S
Brooklyn, NY  11201

      Re:    *United States v. Shelton, et al.*, 18-cr-609 (RJD)

Dear Judge Dearie:

    We represent defendant Anthony Zottola in the above-referenced matter.  We write on behalf of all defendants proceeding to trial in opposition to the government's Motion for an Anonymous and Partially Sequestered Jury (ECF Doc. 378).

**I.    Introduction and Legal Standard**

    Mr. Zottola and his co-defendants have a constitutional right to a fair trial—free of any unnecessary reputational burden on the presumption of innocence.  That concern, which is given special and explicit mention in this District Court's Local Rule 23.1, is very real here because Mr. Zottola is indicted for the unthinkable: orchestrating violent attacks, resulting in the death of his own father.  Of course, telling jurors that the Court will protect their identities and their safety by not disclosing their names and having armed U.S. Marshals escorting them to and from court sends the very direct message that their safety is in jeopardy (even when it is not). The result is to undermine the defendants' constitutional right to the presumption of innocence and the salutary purpose of Local Rule 23.1, suggesting instead to jurors that they should infer that the defendants are dangerous, and therefore probably deserve to be convicted regardless of the evidence shown at trial. Thus, a measure that, according to the government, is designed to ensure a fair and impartial jury, may very well produce exactly the opposite effect.  *See* Babak A. Rastgoufard, Note, *Pay Attention to That Green Curtain: Anonymity and the Courts*, 53 Case W. Res. L. Rev. 1009, 1012 (2003) ("the use of an anonymous jury suggests a need to protect the jury from the defendant, and thus subverts the defendant's constitutional right to a presumption of innocence.").

    The government has provided no basis to justify such prejudicial measures.  Precisely because of the constitutional stakes for the defendants, the Court's discretion to order an anonymous and sequestered jury is limited to cases where there is a "***strong reason to believe that the jury needs protection***." *United States v. Eppolito*, No. 05-CR-192 (JBW), 2006 WL 220061, at *1 (E.D.N.Y. Jan. 30, 2006) (denying

government's motion for an "anonymous and escorted jury") (quoting *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir.1985)).  Lacking that "strong reason," the government has resorted instead to repeating the allegations of violence against Mr. Zottola and his co-defendants as if the Indictment itself poses a specific threat to the integrity of the jury.  This circular logic of using the very charges of which Mr. Zottola is presumed innocent as an excuse for burdening that same constitutionally protected presumption reveals the spurious nature of the government's motion.  *See United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991) ("the empaneling of an anonymous jury and its potential impact on the constitutionality of a trial must receive close judicial scrutiny and be evaluated in the light of reason, principle and common sense").  The Court should deny the government's request in full.

**II.     The is No Strong Reason to Believe that the Jury Requires Protection**

    **A.**     *Serious Charges are Insufficient to Justify an Anonymous and Sequestered Jury*

The government's argument focuses almost exclusively on the violent allegations against the defendants.  *See* Gov. Mot. at 14 ("Courts assess defendants' dangerousness by the seriousness of the charged crimes, including whether the defendants are charged with participating in a large-scale criminal enterprise.").  Such charges, however, do not automatically trigger the prejudicial relief the government seeks.  To the contrary, "[t]he empanelment of an anonymous jury is a drastic measure, and is one that should be taken only in limited circumstances." *United States v. Mostafa*, 7 F. Supp. 3d 334, 336 (S.D.N.Y. 2014) ("The nature of the charges against a defendant does not, *ipso facto*, require such empanelment.").

All but ignoring that maxim, the government's argument boils down to no more than "the Defendants are dangerous and, based on the evidence to be presented at trial, they are likely to be perceived by the jurors as dangerous." Gov. Mot. at 16.  That bare assertion is not the "severe" and concrete risk to the ***jury*** or ***judicial process*** that the law requires.  *See Eppolito*, No. 05-CR-192, 2006 WL 220061, at *2 ("while the seriousness of the charges and the strength of the possible penalties alone may not be enough to conclude that a defendant is likely to engage in jury tampering") (emphasis added); *accord United States v. Millan-Colon*, 834 F. Supp. 78, 83 (S.D.N.Y. 1993) ("although as the Government contends, the defendants in this case do face stiff penalties if convicted, this fact does not in and of itself lead to the conclusion that the defendants will engage in jury tampering").

If anything, the government's argument only emphasizes the inherent prejudice to the defendants' presumption of innocence: that the nature of the charges will lead the juror to assume the defendants are dangerous, and that perception would only be reinforced should the jurors receive "protection" from the defendants as part of their service.  That risk to the defendants' constitutional protections is precisely why nebulous suggestions of danger, and violent charges are dismissed as insufficient to require an anonymous sequestered jury.  *See, e.g., Mostafa*, 7 F. Supp. 3d at 336 (denying, in a high profile terrorism case, "the Government's motion for an anonymous jury and for other protective measures, including daytime sequestration and transport to and from an undisclosed location at the beginning and end of each trial day" as  so ordering in the absence of "specific facts suggesting that such drastic measures are warranted," "would run counter to the cloak of innocence that surrounds any defendant on trial in this country"); *Eppolito*, No. 05-CR-192 (JBW), 2006 WL 220061, at *1 (denying government's motion for an

"anonymous and escorted jury" where defendants were "both retired New York City police detectives, [who] st[ood] accused of having used their positions on the police force to carry out numerous crimes on behalf of the mafia, including murder, kidnaping, bribery, tampering with a witness, victim or informant, retaliating against a witness, victim or informant, and obstruction of justice").[1]

Nor do bare allegations that some of the defendants have connections to organized crime support the government's motion. *See* Gov. Mot. at 16. The Second Circuit requires that organized crime allegations "ha[ve] some ***direct relevance*** to the question of juror fears or safety in the trial at hand, beyond . . . innuendo." *Vario*, 943 F.2d at 241 (emphasis added). The government's oblique suggestion that Shelton had "connections to a network of violent actors," falls far short. Gov. Mot. at 16. Improper "innuendo" is all the government has provided here. *See Vario*, 943 F.2d at 241.[2]

The court's denial of a similar request by the government in *United States v. Madonna*, No. 17-CR-89 (CS), ECF Doc. 916, Order at 2 (S.D.N.Y. Dec. 9, 2019), is particularly instructive. The charges in *Madonna* were equally as violent, and perhaps more entwined with organized crime than those here. The *Madonna* defendants, including the alleged acting boss of the Lucchese crime family, were indicted for and eventually convicted of an execution-style murder of a mafia associate, and sentenced to life in prison. *See* DOJ Press Release, "Leader And Members Of Mob Family Sentenced To Life In Prison For Murder, Racketeering, And Other Crimes," (July 27, 2020).[3] Still, the court denied the government's motion for an anonymous and partially-sequestered jury, rejecting virtually the same arguments raised by the government here, explaining: "Courts in this [Circuit] routinely try cases involving members of violent criminal groups who still have comrades on the street, and special measures for juries are rarely even

---

[1] The government also raises that "at least two defendants have a history of violence or weapons convictions predating the conduct charged in the Indictment," Gov. Opp. at 6, as further evidence of the need to protect the jury. During those prior prosecutions, however, the defendants did not attempt to interfere with the jury or the judicial process, further diminishing any need for an anonymous sequestered jury. *See United States v. Madonna*, No. 17-CR-89 (CS), ECF Doc. 916, Order at 2 (S.D.N.Y. Dec. 9, 2019) (denying motion for anonymous sequestered jury, noting "Defendants have been the subject of numerous prior prosecutions, but there have been no attempts to tamper with jurors and witnesses in those cases."). Mr. Zottola and at least two other defendants have no significant criminal history.

[2] With respect to Mr. Zottola, the government has not alleged his involvement with organized crime. Thus, to the extent the Court orders an anonymous sequestered jury on the basis of other defendants' alleged organized crime connections, it should sever his trial to avoid the palpable and unwarranted prejudice.

[3] Available at: https://www.justice.gov/usao-sdny/pr/leader-and-members-mob-family-sentenced-life-prison-murder-racketeering-and-other.

Hon. Raymond J. Dearie
June 30, 2022
Page 4 of 8

---

requested in those cases." *Madonna*, No. 17-CR-89 (CS), ECF Doc. 916, Order at 2. This Court should do the same and deny the government's motion.[4]

### B. *There is no Evidence of Specific Threats to the Integrity of the Judicial Process*

Whether there is any specific "threat of corruption of the judicial process," is perhaps the most salient factor in determining whether there is a "strong reason to believe that the jury needs protection." *See, e.g., Eppolito*, No. 05-CR-192, 2006 WL 220061, at *1 (quoting *Thomas*, 757 F.2d at 1365). Specifically, as the government recognizes, "[w]ith respect to a defendant's past attempts to tamper with the judicial process, courts look for evidence of previous intimidation, bribing, or violence toward witnesses or jurors." Gov. Mot. at 14. A careful reading of the government's motion confirms that nothing of the sort is credibly alleged against the defendants.

For example, with respect to Mr. Zottola, the government points to alleged "attempts to monitor the investigation in this case by accompanying his father to meetings with law enforcement," and a letter that Mr. Zottola wrote to his brother, a government cooperating witness, after his arrest, stating that that "no matter what [they] were there for each other." Gov. Opp. at 18. Such inchoate actions fall far short of the Second Circuit's requirements. *United States v. Millan-Colon*, which denied the government's motion based on materially similar allegations, is illustrative. *Millan-Colon*, 834 F. Supp. at 84. In *Millan-Colon*, the government argued that the defendants "evinced an inclination to threaten and intimidate potential witnesses," based on "veiled threats, to the effect that family members of any person who chose to cooperate with the Government would be in danger." *Id.* The government also proffered that a defendant "showed a co-defendant a list of names and addresses of the defendants in this case, and conveyed the clear threat that "anyone considering cooperating with the Government should reflect on the ease with which family members could be located and harmed." *Id.* But even those far more concrete allegations were ultimately insufficient to justify the prejudice to the defendants' presumption of innocence and trial rights inherent in an anonymous sequestered jury. *Id.*

The allegations as to Mr. Zottola pale in comparison to those in *Millan-Colon*. Even in the government's telling, Mr. Zottola never attempted to interfere with the judicial process or intimidate a single witness. Even if he "escorted" his father to proffer sessions, there is no allegation that he tried to hamper them or otherwise participate. The letter to his brother is less convincing yet. Far from "attempt[ing] to dissuade a witness from cooperating with law enforcement," Gov. Opp. at 18, it is no

---

[4] The government's cases do not suggest otherwise—they are inapposite. *See* Gov. Mot. at 16-17. In *United States v. Thomas*, 757 F.2d 1359, 1362 (2d Cir. 1985), the defendants "were responsible for the murder of several individuals that the [defendants] believed were government witnesses." *United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994), involved the "alleged boss of the Luchese crime family" who was charged with and demonstrated that he "was willing to interfere with the judicial process by murdering government witnesses." *United States v. Gotti*, 459 F.3d 296, 301 (2d Cir 2006), similarly involved the acting boss and other high ranking members of the Gambino crime family. In *United States v. Barnes*, 604 F.2d 121, 137 (2d Cir. 1979), the defendants did not directly challenge "the court's failure to disclose jurors' exact residence addresses."

more than a plea for Mr. Zottola's own brother to believe in his presumption of innocence—just as the law requires of the jury. *See, e.g., United States v. Gammarano*, No. 06-CR-0072 (CPS), 2007 WL 2077735, *4 (E.D.N.Y. July 18, 2007) (emphasizing "a defendant's interest . . . in maintaining the presumption of innocence" in addressing the propriety of "[e]mpaneling an anonymous [and sequestered] jury").

The allegations as to Mr. Shelton are equally unpersuasive. The government raises: "Shelton's attempt to recover a cellular telephone from law enforcement that contained incriminating communications between Shelton and Anthony Zottola." Gov. Opp. at 18. Specifically, that after the government seized several cellphones during a search of Mr. Shelton's home, his wife "subsequently contacted law enforcement agents on two occasions, told them that one of the devices seized pursuant to the warrant belonged to her, and sought its return." *Id.* at 9. There is nothing coercive, obstructive, or particularly nefarious about this alleged conduct—requesting a return of seized property is expressly contemplated by Federal Rule of Criminal Procedure 41. *See* Fed. R. Crim. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."). The government also relies on Shelton's "possession of a contraband cell phone in prison, which he used to communicate with Anthony Zottola before Zottola's arrest." Gov. Opp. at 18. There are no allegations that Mr. Shelton or Mr. Zottola attempted to interfere with the judicial process during any alleged communications. Indeed, the government has disclosed thousands of text messages between the co-defendants from prior to Mr. Shelton's arrest, containing not a shred of obstructive evidence. While allegedly possessing a contraband cellphone in jail is a chargeable offense, it is vastly different than the allegations of obstruction and tampering typically present when an anonymous partially sequestered jury is justified. *See, e.g., United States v. Coonan*, 664 F. Supp. 861, 862-63 (S.D.N.Y. 1987) ("it has been our observation over the years that there is a category of persons who, although prone to the most outlandish conduct, seem to draw the line at interfering with those who are engaged in the administration of the judicial process . . . these defendants can . . . lay claim to being within that category. Until some evidence to the contrary appears, we should treat them accordingly.").

Finally, the government cannot use the specter of Shelton's alleged organized crime connections and "ability to recruit individuals to commit criminal acts at his direction" to manufacture a concern for the jury's safety and the integrity of the judicial process when none exists. Shelton, and the other defendants in this case, "are simply not of the same character as those whose power, prominence, and public presence would have warranted substantial jury protection." *United States v. Mora*, No. 94-CR-0729 (CPS), 1995 WL 519987, at *4 (E.D.N.Y. Aug. 16, 1995) (denying, in part, government's motion for an anonymous, sequestered jury) (citing *United States v. Locasio*, 6 F.3d 924 (2d Cir.1993) (prosecution of John Gotti)).[5]

---

[5] The government has not made even the barest suggestion of obstructive conduct as to Ross, Codner or Lopez, further undermining the government's argument.

Hon. Raymond J. Dearie
June 30, 2022
Page 6 of 8

---

      **C.**     *Even in Cases Receiving Significant Media Attention, the Court Can Protect the Jury from Taint and Harassment with Far Less Prejudicial Measures*

      The government points to the media attention that this case has received to date and posits that "[t]he expected media attention may put significant pressure on jurors to reach a verdict based on considerations other than the evidence presented at trial, such as avoiding the notoriety associated with the defendants or conversely, seeking fame." Gov. Mot. at 19.

      But the simple likelihood of publicity does not justify the prejudice wrought by an anonymous and sequestered jury. *See Mostafa*, 7 F. Supp. 3d at 337 ("The fact that a case may receive press attention—even a great deal of press attention—is itself insufficient to justify the impact on a defendant's trial that empanelling an anonymous jury may have."). There must be more: the media attention itself must raise a real possibility of tainting the jury. Otherwise, there is simply no principled basis to limit such drastic measures to those cases where they are truly necessary. *See id.* at 337-38 ("Mostafa is accused of acts involving material support of terrorist and terrorist organizations. Those charges are in and of themselves, however, an insufficient basis upon which to grant an anonymous jury. They are also an insufficient basis on which to order the "other protective measures" urged by the Government. . . .This case presents a fact pattern that has only two of the elements the Second Circuit requires: serious charges and significant media attention. **Those elements do not, however, distinguish this case from any number of cases tried in this district each year**.") (emphasis added).

      Unable to meet its burden, the government instead opts to simply string citing news articles about this case. *See* Gov. Opp. at 9-12. The government's only articulated concerns, that jurors will vote a certain way not because of the evidence but to "avoid[] the notoriety associated with the defendants or conversely, seek[] fame," are purely speculative. There is no specific basis to believe that the jury panel, once it is chosen, will be unusually prone to seek or shy away from media attention, or more importantly, that the defendants will attempt to influence them. *See, e.g., Eppolito*, No. 05-CR-192, 2006 WL 220061, at *2 ("[P]ublicity alone will not put the jurors at risk. If--as the court finds--neither the defendants nor their associates are likely to engage in any activity that would endanger the jurors or otherwise threaten the integrity of the judicial process, the number of articles written about the case is irrelevant to the determination here."). The government's rank speculation is not a basis for prejudicing the defendants' constitutionally-protected rights.[6]

      Indeed, if media attention was truly the government's concerns, there are remedies more narrowly tailored to protect the jury from media attention while avoiding the inherent prejudice to Mr. Zottola and his co-defendants of an anonymous jury. For example, in the high profile FIFA bribery case, the court in *United States v. Napout*, ensured that while the jury's names and identifying information remained shielded from the public, the venire panel "was not anonymous with respect to any of the parties," thus

---

[6] The government's unsupported arguments here stand in stark contrast to the cases they cite. *See, e.g.,* Gov. Mot. at 19. In *United States v. Wong*, 40 F.3d 1347, 1377 (2d Cir. 1994), the defendants and their organization had a demonstrated "policy of killing witnesses." *United States v. Kadir*, 718 F.3d 115, 121 (2d Cir. 2013), also involved specific evidence that a defendant "had threatened to harm potential witnesses." Nothing similar exists here.

"protect[ing] the [defendants'] fundamental rights." *United States v. Napout*, 963 F.3d 163, 189 (2d Cir. 2020) ("the district court protected the appellants' fundamental rights by ensuring that the jury was not anonymous with respect to any of the parties. While the jurors' identities were kept from the public, the appellants and their counsel (and the government, too) were provided with the names of the prospective jurors during jury selection and were free to investigate any of them for potential bias."); *see also United States v. Shkreli*, No. 15-CR-637 (KAM) (E.D.N.Y. July 5, 2017) (ordering parties' agreement that the defendant "will not make comments to the press regarding the case, evidence or witnesses within the courthouse or the courthouse perimeter" in lieu of the government's motion to semi-sequester the jury); *Millan-Colon*, 834 F. Supp. at 85 ("the Court is not persuaded that anonymity is appropriate on th[e] basis" of publicity as, among other things "daily instructions to the jury by the Court, admonishing them to refrain from reading the newspapers or watching the television news, will remedy the potential for prejudicial publicity.").[7]  The government's speculative concerns cannot justify the significant burden to the defendants' constitutional presumption of innocence and trial rights is required.

### III. The Defendants' Constitutionally-Protected Trial Rights Will Suffer Irreparable Prejudice

The government gives short shrift to the defendants' fundamental constitutional protections under the Fifth and Sixth Amendments, including the right to be presumed innocent, the right to a fair and public trial by a jury of their peers, and the right to due process of law.  *See* Gov. Opp. at 19-22.  But those protections—and the prejudice that the government's requested procedures would invariably wreak—should be the starting point of the Court's inquiry here.  The defendants are literally fighting for their lives, facing mandatory life without parole in the event of conviction.  *See, e.g., Mostafa*, 7 F. Supp. 3d at 336 ("The principle that a shield of innocence surrounds a defendant extends back to ancient times.  Any practice that may impact that shield of innocence requires close scrutiny in light of reason, principle and common sense. The empanelling of an anonymous jury is such a practice. This Circuit has realized that allowing an anonymous jury carries with it the possibility of unfair prejudice to the defendant and the danger of encroaching on the presumption of innocence.") (quotation marks and citations omitted); *Coonan*, 664 F. Supp. at 862 ("As the Second Circuit has recognized, the 'presumption of innocence' is part of the foundation of our system of criminal justice, and a practice which burdens it—such as the use of an anonymous jury—must receive careful scrutiny.") (quotation marks and citations omitted).

The government does not even bother to address the severe prejudice to Mr. Zottola and his co-defendants should the jury require partial sequestration, suggesting instead a paltry remedy: "that the jurors should be told they are being escorted in and out of the courthouse to protect their privacy and in order to ensure a timely start to each day of trial." Gov. Opp. at 22.  But the repetitive nature of such "protections" will invariably chip away at the defendants' presumption of innocence—how could it not? As the Court in *United States v. Mostafa* explained, the government's requested "protective measures," will "serve to remind the jury each day as they arrive and as they leave that this trial requires special

---

[7] Indeed, the news articles that the government cites largely rely on DOJ press releases and government filings.  As in *Shkreli*, the Court could instead limit the parties' statements to the media to ameliorate any concerns related to significant publicity.

Hon. Raymond J. Dearie
June 30, 2022
Page 8 of 8

handling. Whether the Court provides the jury with a 'neutral' explanation may not eliminate that ongoing and repeated reminder." *Mostafa*, 7 F. Supp. 3d at 338.

The government effectively concedes that this very prejudice is similarly present here, arguing that sequestration and anonymity are required because "the Defendants are dangerous and, based on the evidence to be presented at trial, they are likely to be perceived by the jurors as dangerous." Gov. Mot. at 16. The jurors' purported fears, although insufficient to warrant protective measures, *see supra* § II.A, are inherently prejudicial and raise severe concern that the government's requested "protections" only risk compounding that prejudice. Prejudice to defendants' presumption of innocence will be unavoidable in the face of sequestration and anonymity of the jury. While "steps could be taken to reduce the prejudice to Defendants, that prejudice cannot be entirely eliminated." *Madonna*, No. 17-CR-89 (CS), ECF Doc. 916, Order at 1 (S.D.N.Y. Dec. 9, 2019).

The proposed anonymity measures will also hamper defendants' ability to conduct an effective *voir dire*. In a case like this, with allegations of gruesome violence, patricide and organized crime, thorough *voir dire* is particularly important to ensure that an unbiased jury is empaneled. The government's proposed anonymity requirement, precluding the defense teams from learning the jurors "names, addresses, and places of employment," Gov. Opp. at 20, would stymie investigation into potential jurors, and preclude follow up questions that would shed light on the jurors' lives and livelihoods that could provide a view into the jurors' perspective and thus potential biases. Because of the extreme allegations here, there is a heightened risk of bias among the pool of potential jurors; the parties' ability to effectively protect the jury from such taint is of equally heightened import. *See Madonna*, No. 17-CR-89 (CS), ECF Doc. 916, Order at 1 (the court "must balance the defendant's interest in conducting meaningful voir dire and in maintaining the presumption of innocence, against the jury member[s'] interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict.").

Because the government has not demonstrated a "strong reason to believe that the jury needs protection," *Eppolito*, No. 05-CR-192 (JBW), 2006 WL 220061, at *1, the Court should not permit the defendants' fundamental presumption of innocence and constitutionally protected trial rights to be crippled by an anonymous, partially sequestered jury.

Respectfully submitted,

_____/s/ IH_____
Henry E. Mazurek
Ilana Haramati

*Counsel for Defendant Anthony Zottola*

cc:   Counsel of record (*via ECF*)